# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **ROBERT C. LAGERSTROM,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| **v.** ) | **Case No. 04-2517** |
| ) | |
| **NORMAN Y. MINETA, Secretary of** ) | |
| **Transportation** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Robert C. Lagerstrom brings suit against Norman Y. Mineta, Secretary of the United States Department of Transportation, under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. This matter is before the Court on Defendant's Motion To Dismiss Plaintiff's Disparate Impact Claims Under The Age Discrimination In Employment Act (ADEA) (Doc. #34) filed September 2, 2005. For reasons set forth below, defendant's motion is overruled.

## Background

Plaintiff's complaint may be summarized as follows:

Plaintiff is 63 years of age. In 1993, plaintiff applied for a position as an air traffic controller with the United States Department of Transportation/Federal Aviation Administration ("FAA"). On August 19, 2003, plaintiff learned that earlier in 2003, the FAA had hired air traffic controllers for the Kansas City Air Route Traffic Control Center ("ARTCC") in Olathe, Kansas. On September 26, 2003, plaintiff initiated an administrative complaint with the FAA, alleging that it had discriminated against him based on age when it

selected other applicants in 2003.  On July 29, 2004, the EEOC issued a right to sue letter.

On October 19, 2004, plaintiff filed suit against defendant, alleging age discrimination in the hiring of air traffic controllers for the Kansas City ARTCC in 2003.  On March 28, 2005, defendant filed a motion to dismiss (Doc. #7) which sought dismissal of certain claims due to plaintiff's failure to exhaust administrative remedies and the bar on liquidated damages against the United States.  The Court sustained the motion in part, dismissing (1) plaintiff's claims based on FAA hiring decisions after September 26, 2003; and (2) plaintiff's claims for liquidated damages.  See Memorandum And Order (Doc. #26) filed July 29, 2005.  The Court overruled defendant's motion with regard to FAA hiring decisions between January 1 and September 26, 2003. Id.  On September 2, 2005, defendant filed his current motion, which seeks to dismiss plaintiff's disparate impact claims for lack of subject matter jurisdiction.

## Rule 12(b)(1) Motion To Dismiss

The Court may only exercise jurisdiction when specifically authorized to do so, see Castaneda v. INS, 23 F.3d 1576, 1580 (10th Cir. 1994), and must "dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking."  Scheideman v. Shawnee County Bd. of County Comm'rs, 895 F. Supp. 279, 280 (D. Kan. 1995) (citing Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974)); Fed. R. Civ. P. 12(h)(3).  Plaintiff sustains the burden of showing that jurisdiction is proper, see id., and he must demonstrate that the case should not be dismissed.  See Jensen v. Johnson County Youth Baseball League, 838 F. Supp. 1437, 1439-40 (D. Kan. 1993).

Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction generally take two forms: facial attacks on the complaint or factual attacks on the accuracy of the allegations in the complaint.  See Holt v. United States, 46 F.3d 1000, 1002-03 (10th Cir. 1995).  Defendant's motion to dismiss falls within the former

category because the Court need not consider evidence outside the complaint.

## Analysis

Defendant seeks to dismiss plaintiff's disparate impact claims for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Fed. R. Civ. P.  Specifically, defendant argues that under the federal-sector provision of the ADEA, 29 U.S.C. § 633a, the federal government has not waived sovereign immunity for such claims.

The principle of sovereign immunity defines the Court's jurisdiction to entertain a suit against the United States.  FDIC v. Meyer, 510 U.S. 471, 475 (1994) (citing United States v. Sherwood, 312 U.S. 584, 586 (1941)).  Consent of the federal government to be sued is a prerequisite to jurisdiction.  United States v. Mitchell, 463 U.S. 206, 212 (1983).  In other words, absent government consent, sovereign immunity precludes suits against the federal government or its agencies.  Fent v. Okla. Water Res. Bd., 235 F.3d 553, 556 (10th Cir. 2000).  The sovereign immunity bar even reaches claims for injunctive relief.  United States v. Murdock Mach. & Eng'g Co. of Utah, 81 F.3d 922, 929 (10th Cir. 1996).  Consent occurs when Congress unequivocally expresses in statutory text its intent to waive sovereign immunity.  Id.  To sue the United States, its agencies or officers, plaintiff must allege (1) a basis for the court's jurisdiction; and (2) a specific statute that waives the government's immunity from suit.  Baca v. United States, 467 F.2d 1061, 1063 (10th Cir. 1972); Thomas v. Pierce, 662 F. Supp. 519, 523 (D. Kan. 1987).  If the government has waived sovereign immunity, the Court must strictly construe it in order to prevent an expansion beyond what Congress intended.  See Pipkin v. U.S. Postal Serv., 951 F.2d 272, 275 (10th Cir. 1991) (waiver in Federal Tort Claims Act).

The federal sector provision of the ADEA is a limited waiver of sovereign immunity, 29 U.S.C. § 633a; Zhu v. Fed. Hous. Fin. Bd., 389 F. Supp.2d 1253, 1291 (D. Kan. 2005), and defendant argues that disparate

3

impact claims are not within the scope of that waiver.  Defendant insists that the legislative history, statutory text and treatment of Section 633a demonstrate that Congress only intended to waive sovereign immunity as to claims of intentional age discrimination.

## I.      Legislative History

Defendant asserts that the legislative history of Section 633a demonstrates that Congress only intended to protect federal employees from intentional discrimination based on age.  Defendant argues that in contrast to Title VII, Congress did not aim to create a cause of action under Section 633a for the type of conduct that a disparate impact theory addresses.  Plaintiff responds that the legislative history of Section 633a indicates an intent to create broad protection under both disparate treatment and disparate impact theories.

On March 9, 1972, Senator Lloyd Bentsen introduced a bill to extend ADEA coverage to government employment.  See S. 3318, 92nd Cong., 2d Sess., 118 Cong. Rec. 7745 (1972).  The Second Circuit discussed Senator Bentsen's proposals as follows:

> [T]he bill did not propose a new section for claims against government employers; it simply proposed to expand the definition of employer, which would have made existing provisions of the [ADEA] applicable to claims against the government.  Id. at 7746.  The bill was later restructured by Senator Bentsen to remove the federal government from the general definition of employer and to place appropriate substantive provisions in a separate section similar to § 633a.  Id. at 15894-95.

Bornholdt v. Brady, 869 F.2d 57, 66 (2d Cir. 1989).  Senator Bentsen submitted the restructured bill as an amendment to pending amendments under the Fair Labor Standards Act ("FLSA").  See 118 Cong. Rec. 15894.  The amendment proposed an expansion of the term "employer" to include both state and local governments, while a separate section proposed coverage for federal employment.  The FLSA bill reported by the Committee on Labor and Public Welfare, S. Rep. No. 92-842, pp. 93-94 (1972), included Senator

4

Bentsen's amendment.  As enacted, Section 633a was "patterned directly after §§ 717(a) and (b) of the Civil Rights Act of 1964 [codified at 42 U.S.C. §2000e-16], as amended in March 1972," which similarly extended Title VII protections to federal employees.  Lehman v. Nakshian, 453 U.S. 156, 166 n.15 (1981).

Section 717(a), the federal sector provision of Title VII, provides that "[a]ll personnel actions affecting employees or applicants for employment . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-16(a).  Congress principally added Section 717 to eradicate "entrenched discrimination in the Federal service" by strengthening internal safeguards and providing for full rights just as provided to individuals in the private sector under Title VII.  H.R. Rep. No. 92-238 (1971), reprinted in 1972 U.S.C.C.A.N. 2137, 2159; see also Chandler v. Roudebush, 425 U.S. 840, 841 (1976)  In Morton v. Mancari, 417 U.S. 535 (1974), the Supreme Court acknowledged that the 1972 amendments to Title VII carried over and applied Title VII's substantive anti-discrimination law to the federal government.  417 U.S. at 547.  House Report 92-238 noted that:

> Civil Service selection and promotion requirements are replete with artificial selection and promotion requirements that place a premium on "paper" credentials which frequently prove of questionable value as a means of predicting actual job performance.  The problem is further aggravated by the [Civil Service Commission]'s use of general ability tests which are not aimed at any direct relationship to specific jobs.  The inevitable consequence of this, as demonstrated by similar practices in the private sector, and, found unlawful by the Supreme Court, is that classes of persons who are culturally or educationally disadvantaged are subjected to a heavier burden in seeking employment.

1972 U.S.C.C.A.N. at 2159.

Senator Bentsen recognized that the federal sector ADEA protections would be "substantially similar" to those recently enacted in an amendment to Title VII.  118 Cong. Rec. at 24397.  He cited findings by the National Council on Aging on age discrimination in the federal workplace.  Keith R. Fentonmiller, The

<u>Continuing Validity of Disparate Impact Analysis for Federal-Sector Age Discrimination Claims</u>, 47 Am. U.L. Rev. 1071, 1089 (June 1998) (citing 119 Cong. Rec. 2648 (1973)).  In part, the study found that facially neutral reduction-in-force programs had drastic consequences for older workers.  <u>Id.</u> at 1090 (citing ELIZABETH M. HEIDBREDER, NATIONAL COUNCIL ON AGING'S INSTITUTE OF INDUSTRIAL GERONTOLOGY, CANCELLED CAREERS: THE IMPACT OF REDUCTION-IN-FORCE POLICIES ON MIDDLE-AGED FEDERAL EMPLOYEES III (Comm. Print 1972)).  The legislative history of the federal sector provision suggests that by enacting Section 633a, Congress intended to address both intentional and unintentional discrimination.  Senator Bentsen explicitly recognized that Section 633a emulated Section 717.  When Congress uses the same language in two statutes with similar purposes, particularly when close in time, it is presumed that Congress intended the same meaning for both statutes.  <u>Northcross v. Bd. of Educ. of Memphis City Sch.</u>, 412 U.S. 427, 428 (1973).  Section 633a, which closely followed Congress's consideration of the Title VII amendments, tracked Sections 717(a) and (b) nearly verbatim.  The legislative histories of Section 717 and Section 633a indicate that Congress contemplated both intentional and unintentional discrimination.  Congress made an unequivocal waiver of sovereign immunity for both theories of liability under the federal sector ADEA.

## II.    Statutory Text and Meaning

Defendant argues that Section 633a is more limited than the ADEA provisions applicable to private sector employees, 29 U.S.C. §§ 623(a)(1) and (2), and that its language is most aptly directed at intentional discrimination.  Defendant further asserts that the recent Supreme Court decision in <u>Smith v. City of Jackson</u>, 125 S. Ct. 1536 (2005), which recognized a disparate impact theory against private employers under the ADEA, does not support a disparate impact theory under the narrower and more self-contained Section 633a.  Plaintiff responds that because the ADEA text mirrors that of Title VII, it should be construed in the same way.

Plaintiff further contends that the language of Section 633a focuses on the consequences of a personnel action and not the motivation behind it.  Plaintiff also responds that even though <u>Smith</u> concerned a different section of the ADEA, its result applies here because it did not contain limiting language and Section 633a "is part of the entire Act."  <u>Plaintiff's Suggestions In Opposition To Defendant's Motion To Dismiss</u> (Doc. #48) filed October 25, 2005 at 2.

Section 623, the private sector employment provision which was at issue in <u>Smith</u>, reads in relevant part as follows:

> It shall be unlawful for an employer –
>> (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
>> (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age. * * *

29 U.S.C. § 623(a).  By contrast, Section 633a(a) simply reads that "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a).  A plain reading shows that Section 633a is more broadly phrased than Section 623(a).  Where Section 623(a) refers to various categories of employment actions, Section 633a(a) generically covers all personnel actions.  Also, Section 633a(a) generically protects federal employees from "any discrimination based on age."  Furthermore, the broad and inclusive phrasing of Section 633a is not dependent upon or constrained by the treatment of Section 623.  Indeed, the federal sector provision is "self-contained" and unaffected by other sections of the ADEA.[1]  <u>Lehman</u>, 453 U.S. at 168.  The

---

[1]        Section 633a(f) provides that "[a]ny personnel action of any department, agency, or other entity referred to in subsection (a) of this section shall not be subject to, or affected by, any provision of

breadth of Section 633a(a) therefore necessarily depends upon its own terms – particularly the term "discrimination." Id. at 168; see Keith R. Fentonmiller, supra, at 1902–93.

The Supreme Court has held that the concept of "discrimination" is generally susceptible to multiple interpretations. Id.; Regents of Univ. of Cal. v. Bakke, 438 U.S. 265, 284 (1978); Guardians Ass'n v. Civil Serv. Comm'n of City of N.Y., 463 U.S. 582, 592 (1983). In normal usage, "discrimination" refers to the act or practice of distinguishing "categorically rather than individually." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY: UNABRIDGED 648 (1993). In the Title VII context, the Supreme Court has found that disparate treatment and disparate impact analysis determine the same ultimate issue of discrimination, but with different evidentiary methods. See Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 987 (1988). In Watson, the Supreme Court held as follows:

> In certain cases, facially neutral employment practices that have significant adverse effects on protected groups have been held to violate [Title VII] without proof that the employer adopted those practices with a discriminatory intent . . . . The evidence in these "disparate impact" cases usually focuses on statistical disparities, rather than specific incidents, and on competing explanations for those disparities.
>
> The distinguishing features of the factual issues that typically dominate in disparate impact cases do not imply that the ultimate legal issue is different than in cases where disparate treatment analysis is used . . . . [T]he necessary premise of the disparate impact approach is that some employment practices, adopted without a deliberately discriminatory motive, may in operation be functionally equivalent to intentional discrimination.

487 U.S. at 987. The term "discrimination" does not refer to one method of analysis over another; instead, it is the destination for two different pathways of proof. This conclusion is further strengthened by inclusion of "any" in Section 633a(a). Section 633a(a) protects federal employees from any discrimination, whether intentional or unintentional, based on age.

_____

this chapter . . . ." 29 U.S.C. § 633a(f).

8

In <u>Reynolds v. Ala. Dep't of Transp.</u>, 4 F. Supp.2d 1092 (M.D. Ala. 1998), a federal district court found in the Title VII context that defendants "failed in their attempt to establish that the 'unequivocal expression' requirement demands more than an expression by Congress of its intent to abrogate the States' immunity as to a statute as a whole." 4 F. Supp.2d at 1097. A waiver of sovereign immunity does not require an explicit abrogation as to all potential theories of liability. <u>Id.</u> Section 633a contains a waiver of sovereign immunity with certain limitations on who may sue and be sued, which are not relevant in this action. <u>See</u> <u>Zhu</u>, 389 F. Supp.2d at 1291. Defendant does not point to any authority which suggests that Section 633a(a) waived governmental immunity only for disparate treatment. The inclusive language of Section 633a(a) unequivocally expresses a waiver of sovereign immunity for any discrimination based on age, whether intentional or not. The Court is not aware of any authority which indicates that a general statement of intent to waive sovereign immunity does not include all theories of liability. <u>See</u> <u>id.</u>

## III.   Disparate Impact Cases

Defendant argues that Section 633a jurisprudence indicates a negative treatment of a disparate impact theory against federal employers. Specifically, defendant claims that only one misguided court has recognized a disparate impact theory for Section 633a. <u>See generally</u> <u>Lumpkin v. Brown</u>, 898 F. Supp. 1263 (N.D. Ill. 1995). Defendant urges the Court to adopt the reasoning of <u>Breen v. Mineta</u>, No. 05-654, 2005 WL 3276163 (D.D.C. Sept. 30, 2005), where the District Court for the District of Columbia declined to grant a preliminary injunction for plaintiffs based on a disparate impact claim under Section 633a. Plaintiff responds that several courts have acknowledged a disparate impact theory under Section 633a.

In <u>Lumpkin</u>, the district court held that however sparse the legislative history of Section 633a, Congress had enacted the federal sector ADEA provision after the landmark Supreme Court decision in <u>Griggs v. Duke</u>

Power Co., 401 U.S. 424 (1971), which recognized a disparate impact theory under Title VII. 898 F. Supp. at 1271. By inference, the district court found that "it may fairly be assumed that as to federal employees the courts . . . would still recognize a disparate impact theory under Section 633a." Id. Although without much analysis or mention of sovereign immunity, other courts have entertained disparate impact theories in the federal sector. See, e.g., Armstrong v. Powell, No. 03-255, 2005 WL 1907278 (W.D. Okla. Aug. 10, 2005) (disparate impact theory assumed for class certification motion); see also Koger v. Reno, 98 F.3d 631 (D.C. Cir. 1996) (disparate impact analysis assumed valid); Klein v. Sec'y of Transp., 807 F. Supp. 1517 (E.D. Wash. 1992) (prima facie case of disparate impact discrimination established); Arnold v. U.S. Postal Serv., 649 F. Supp. 676 (D.D.C. 1986) (Title VII disparate impact applicable to ADEA). By contrast, the district court in Breen found that a disparate impact claim under Section 633a could not be founded on the recent decision in Smith, 125 S. Ct. 1536, because Section 633a is self-contained. Without analysis, the Breen court stated that it had no basis to conclude that the federal government had waived sovereign immunity for disparate impact under Section 633a, and concluded that "there is good reason to doubt that plaintiffs have a cognizable ADEA disparate impact claim against the [defendants]." 2005 WL 3276163, at *7. The Breen court, however, did not deny the preliminary injunction because of that doubt. Id. It denied the injunction because – assuming that a disparate impact theory is available under Section 633a – plaintiff had not established a substantial likelihood of success on the merits. Id.

The text of Section 633a broadly prohibits any discrimination based on age, and legislative history clearly shows that Congress intended the language to be read inclusively. In doing so, Congress explicitly waived sovereign immunity for both intentional discrimination and disparate impact claims. The Court therefore overrules defendant's motion to dismiss.

10

**IT IS THEREFORE ORDERED** that <u>Defendant's Motion To Dismiss Plaintiff's Disparate Impact</u> <u>Claims Under The Age Discrimination In Employment Act (ADEA)</u> (Doc. #34) filed September 2, 2005, be and hereby is **OVERRULED.**

Dated this 13th day of January, 2006 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge

11